court. My name is John Taylor, and I represent Dr. Haritha Nadendla. And I'd like to reserve five minutes of my time for rebuttal, please. I'd also like to advise the court that we are resting on our briefs on the issue of the district court's decision to dismiss plans claims for negligence and breach of the implied covenant of good faith and fair dealing. And I'll be addressing the other arguments in my time today. Your honors, there is no question here that plaintiff's complaint pled but for causation as it relates to the section 1981 discrimination claim. It is undisputed that we did that at paragraph 124 of our complaint. The only dispute is whether plaintiff's allegations, all of which must be taken as true at a 12b motion, comply with the pleading requirements of racial discrimination claim under section 1981. And under not only longstanding case law from this circuit, your honors, but also under the Comcast decision that is at issue and mentioned in the briefs numerous times by the United States Supreme Court, the plaintiff clearly met this pleading requirement. And for this reason... Question, Mr. Taylor. Yes, your honor. I've It says but for plaintiff's race, defendant's wrongful conduct of plaintiff alleged herein would not have occurred. Okay. That's all there is. Where are the facts alleged in this complaint that support the alleged racial discrimination? I agree with you. You use the words but for cause. I mean, you do that. But where are the facts that support the conclusory allegation of but for causation? Yes, your honor. And throughout our complaint, we set out how our client was a qualified physician qualified to be entitled to hospital privileges at the hospital. And that she was subjected to a extremely bad faith and unfair process at the hospital that we set out in detail. And that she's a member of a racial minority group as a physician of Indian origin. That's in paragraph 117. That prior to forcing Dr. Nadenla out of her clinical privileges, the defendant hospital has similarly forced out other physicians of Indian origin and removed their clinical privileges unjustifiably as well. That's paragraph 89. And despite the wrongful positions, that's in paragraph 136. Minority physicians were scrutinized more harshly at defendant's hospital than Caucasian physicians. That's paragraph 134. And from 2017 until the present date, the hospital has treated our client, who is an Indian physician, differently than white physicians who are similarly situated. That's page 127. And then as I said, your honor. But counsel, let me interrupt you and just follow up on Judge Urbanski's question. I mean, even what you're just saying and what you're talking about just now, I mean, it is fair. You allege your client is a minority. And you allege generally that the defendants have treated white doctors differently. But it doesn't. It doesn't do. I didn't see the facts. It looks like the sections you're talking about, paragraphs 88 through 104. And I didn't see anything in there that give any amount of detail that would allow us to say, if what you say is true, that in fact constitutes discrimination. I mean, it's more like the conclusions. And so sure, if the conclusions are correct, you would win. But maybe I'm wrong. But as I read Iqbal and Twombly, you got to do more than that. I mean, if you have a case that says the type of if you would give me that case, because, you know, right now, I'm concerned that what you've pled doesn't rise to what Iqbal and Twombly require. Well, your honor, I believe there is case law we cited in our brief that What's your best? What's your most? I mean, I don't mean to I'm sorry to ask you a question there. I apologize on that. But if you would give me your best one or two cases for pleadings, yeah, and then I'll let you answer. And I really didn't mean to interrupt you after asking a question. That's okay, your honor. I believe the white Phillips case, I'm looking for that in our brief was cited after the Comcast opinion that holds I'm trying to find the page of our brief, but that holds having a person who is of a racial minority treated differently than a person who is a Caucasian or a white person, just alleging that is enough, along with the facts of what happened. We also referenced the Woods v. City of Greensboro case about a minority owned business and contractual breach claim treating white business different than a minority owned business. And so I think your honor, this you it's hard to get inside the mind of a group of people. This is a complex, multi person group. This is a hospital where a lot of actors are involved. It's not a black and white thing. It's a lot of people involved in this decision for a lot of reasons that work together. And there are more than one but four causes for this, where you have racial animus and discrimination that had occurred in the past, like we allege to other positions and occurred again here of white physicians are treated differently and Indian physicians, but also you have direct competitors of our client who are other OBGYN physicians in the area who wanted to force our client out of business. And so those two things working together are both but for causation. Right, but isn't the other group, aren't the allegations with regard to them inconsistent with the claims of race discrimination in this case? Well, your honor, I don't think it's inconsistent, respectfully, because the law is clear even under the Comcast decision, and the other decisions in this circuit, but before and after Comcast, that you only need to have a particular discriminatory conduct VA, but for a cause. But isn't the other group here, also folks who may have the same national origin claim that your client does? Well, it is two things working at the same time, your honor. But if Paul says it's got to be plausible, and if you're saying there's another group that is of the same national origin or race classification as your client, and that they got favored in favor of themselves, how can you argue that therefore it's race discrimination as opposed to just a state law claim of favoring a competing group? Well, your honor, I wouldn't characterize it in exactly that way. I think that the competing practice that we're talking about, one of many positions in this group happens to be of Indian origin. But that doesn't mean that the hospital is saying we choose this one group of Indian positions, and we're going to discriminate against you, Dr. Medina. They were discriminating against her based on her Indian origin, and then at the same time, there was anti-competitive motivations happening. Both of those two things are but for causes that resulted in this harm, in this abjectly unfair process that occurred. Paragraph 66. In addition, on information and belief, defendant Wake Med considered the opinion of another of Dr. Nadendola's direct competitors, Dr. Vijay Sheshadraji, regarding one of the patient events at issue. So how could crediting and favoring Dr. Vijay Sheshadraji be evidence of race discrimination against Dr. Nadendola? Your honor, it's for the reason I just described, that there was a racial discriminatory intent at issue. And then they also favored a competitor group of Dr. Nadendola's here in the Cary, North Carolina Triangle area. One of those positions happens to also be of Indian origin. That's Dr. Sheshadraji, but he's not the only physician in that group. Doesn't that suggest that your complaint is not, of race discrimination, is not plausible under this law and order? Your honor, I don't believe so. And because we, the plausibility threshold is a low bar. We just have to plead enough facts that there is a were discriminated against by Wake Med Hospital. Other physicians were denied privileges based on their race, that white physicians were treated better and differently than minority physicians. And then we looked at the actual conduct of what happened, your honors, where you have, they did not even call or consider any of the medical records for any of the patient care issues when they're denying our clients. Sure. Let me pick up with that. And that may be, I mean, I understand those facts and I'm not commenting one way or the other. And I think your breach of contract claim, the court denied the motion as to that. And that's where it seems like at least one place that would go. Let me ask a question and I may be going a little bit behind what you wanted to do because you wanted to rest on your briefs on an issue. But if you don't mind, I'm going to ask you about it. Assume I disagree with you that on your 1981 claim, but agree with you that you pled a plausible breach of implied covenant, good faith and fair dealing claim. What should I do? Your honor, I would say in that situation, you should still issue an order reversing the decision on the breach of implied covenant and good faith and fair dealing. Of course, we think that the 1981 claim was proper. It should be reversed. And that's the main claim we're talking about here. But yes, we think that the law is clear. We set it out in our brief that that's an independent cause of action for breach of implied covenant of good faith and fair dealing. It's not just part and parcel of the breach of contract claims. That was error as well. As to the procedure of what would happen if it was remanded on only the state claim, I'm not sure exactly how that would all work out. But yes, I think that the court should, if there's an error and we appealed it, issue an order and a decision stating that the lower court erred in that ruling. Your honors, I do want to continue with some of the points that I'd like to make, your honors. And so it's clear that we pled but for causation. I've explained why we pled plausible facts that meet the, even under the Comcast opinion and the way that we stated, we did use the words. And I just want to point out, your honors, that the defense's argument that there can only be one but for cause of a wrong, to the extent that your honors are considering that type of argument should be rejected. That would create an absurd result. First of all, the Comcast court itself said that you can have multiple but for causes using the word a, say quote, a plaintiff bears the burden of showing that race was a but for cause of a but for cause rather than the but for cause saying that there could be more than one. And including the United States Supreme Court case in Postoc, the Clayton County that said events may have more than one but for cause. And if that were not to be the law, your honors, that would create an absurd result because then the defendants, if there was a defendant who a plaintiff, they could not be able to escape liability from that just because the plaintiff now has more than one but for cause of their injury. The defendant would ultimately be awarded for committing more than one form of actionable wrong that caused the injury. And the law then would not protect the victim who had been wronged by a defendant who had been, but it would only protect a victim who, when there was a defendant whose conduct was only one but for cause of the harm rather than even more egregious conduct by a defendant, they committed more than one but for cause. And this comes out in a lot of different contexts, your honor. I know I'm into my rebuttal time, but like in the employment context where a employer may fire an employee based on both racial discrimination and retaliation or by firing an EEOC complaint or something like that, your honor. So there's other contexts as well. I'll save the rest of my time for rebuttal. I do have other points to make, including on the motion for reconsideration, which separately amounts to error by the district court that I'll address that in my final five minutes. Thank you, your honors. Thank you, Mr. Taylor. Ms. Hedrick? Yes, thank you. Good afternoon, your honors, and may it please the court. My name is Elizabeth Hedrick and I am here on behalf of the appellee wake med in this case. I'm happy to address any questions you have, but otherwise I want to start briefly by addressing that last point that Mr. Taylor just raised, which is the propriety of the court's granting of the motion to reconsider. And I think that one's fairly easily disposed of. The trial court has discretion to revisit any interlocutory order at any time before final judgment. That's both inherent and that is granted by the rules of civil procedure. And we simply don't see that it can be an abuse of discretion to reconsider something so that you apply the right standard and get to the right result. And that's what happened here. The court itself said in its order that it had not applied the right standard to the motion to dismiss and that it could not ignore that standard. And the only case that either party is cited to the court that addresses whether it's error to grant a motion for reconsideration is the Schrader versus CSX transportation case. That's from the second circuit. And there the court, it's a very similar situation. The party that had moved originally to dismiss the claim came back with some additional authority and asked the court to reconsider its order. The court reconsidered its order and granted the motion to dismiss. And the second circuit said we can't say that's enough to find an abuse of discretion. And so I don't think that's true in this case where the suggestion is that the Comcast case didn't really change the law. That it was simply a further statement of the law that there can be, you know, following on Bostock. It's got to be but for but there can be multiple but for causes. Comcast really, in this case, did the right thing by issuing another opinion addressing Comcast. Yes, your honor. And I think if you look at the Schrader case, in that case, the court, it wasn't even a different standard or a question of whether the court had applied the right standard. They had looked at case law from two circuits and hadn't looked at other cases from similar circuits. And the court, the movement came back and said, hey, there's this other thing. We think you got this wrong. Every circuit that's looked at this says you've gotten it wrong. And the trial court looked at it and said, okay, I'm going to reconsider my order. I think that here, whether Comcast shifted the, clarified the standard or announced a new standard, maybe that's questionable. Although I will say that it made a big impression in the bar. You know, if you look at the articles that came out, everyone saw that as something new. And I think you only, you won't really see a shift in the way that the courts have analyzed it since. And most importantly, I think you have the trial court here saying, that's not the standard I applied. I didn't look to see if she had plausibly alleged racist above cause. And that's what I need to do. I got to get it right. So I think that was plainly within his discretion. I think any court that's looked at that similar issue has come to that conclusion. But unless there are any other questions on that, I would like to move to the, to the question of whether the plaintiff pledged racism but for cause. And I think it's easy to get turned a little bit sideways here. I agree with some of the, the implication of some of the questions that were posed earlier that I think it's questionable whether she plausibly pled that there was any racial discrimination here at all. But she did have some generalized allegations with some vague facts to back that up. But the district court concluded that she had plausibly pled racial discrimination. What the district court decided she hadn't plausibly pled was that the racial discrimination was a but-for-cause of her removal from the medical staff. And I think implicit in his initial order was that she had alleged it was a motivating factor. But as we know from Comcast, a motivating factor is not enough. It has to be a but-for-cause. And as Judge, as Justice Gorsuch pointed out in the Bostock case, the question for but-for-cause is let's look at the complaint. Let's take all the allegations and start removing things one by one. And so here, if you remove race from the equation, can you conclude from the face of the complaint that the result in this case would have been different? That's the test that Justice Gorsuch announced. And I think if you look at this complaint, that's simply not a plausible inference. As your honors pointed out in the, your questions to plaintiff's counsel, there's only a single allegation that race was a but-for-cause of Dr. Ndendola's removal from the medical staff. And that is the exact kind of conclusory allegation that Twombly and Iqbal tell us we ignore that when we're assessing plausibility. There's only a single other allegation as to the cause or the but-for-cause of her removal from the medical staff. And that, that is paragraph 81. And there, Dr. Ndendola alleges that the decision was driven by the improper financial motives of at least two physicians, Dr. Grana and Dr. Shishadri, and their practice, because as she alleges, they stood to gain financially by her removal from the market. That right there is a factual allegation supported by detail that says what drove the race, it was the improper financial motives. Now, I think there's questions as to whether Dr. Ndendola has, Mr. Taylor talked you through some of the allegations about the fairness of the process and those sorts of things. And I think it's, I understood the argument from the briefing that that shows that the proffered basis for her removal from the medical staff was pretext. In certain cases, and maybe she's raising up here to raise an inference of pretext, a plausible inference of pretext. But I think the fact that she is alleged don't plausibly lead to the inference that the proffered basis was pretext for discrimination or that the pre-discrimination was a but-for-cause of her removal from this medical staff. I do think because of the way she, because of the facts that she alleged, it's not plausible to infer that the proper basis was purely pretextual, at the very least. As she pled that in paragraph 24, the proffered basis was that there were clinical concerns about her practice or the care that she was providing at the hospital. And in paragraph 27, she alleges that each of the parties litigated those alleged clinical concerns throughout the MEC process. In paragraph 36, she says that the MEC considered a three-page summary of all of her peer-reviewed case reports that addressed her clinical care. And most importantly, she alleges that the evidence before the hearing panel in her fair hearing at Wake Med showed that there was conflicting information regarding her patient cases between the nurses and Dr. Ndendola. She doesn't allege that the nurses acted with any racial animus, and it's just simply not plausible to conclude that well-founded concerns about her clinical care did not play some part in the decision that would give rise to an inference that improper considerations caused the decision. But even if pretext is a plausible inference here, the question becomes, what was it pretext for? And that's where I think if you look at the only plausible inference is that if it was pretext, it was pretext for those improper financial motives of her competitors. And how do we know that? Again, we know that because that's what she alleged. She alleged that is what drove the decision here. And we apply Justice Gorsuch's test and look at the facts that are alleged. She says Dr. Grana and Dr. Shashadri are her competitors. She alleges that they manipulated the process that resulted in the decision. She alleges that Dr. Grana was the chair of the OBGYN department and that she raised serious concerns about Dr. Ndendola's care in the review process, something that Dr. Ndendola says was very unusual for a department chair to do. She says Dr. Shashadri had provided an opinion regarding Dr. Ndendola's handling of a patient event that was considered as part of her application review. And she says both Drs. Grana and Dr. Shashadri stood to gain financially by removing her from the medical staff and from the market. She also goes into a lot of detail about a business dispute that she was allegedly having with Dr. Grana and Dr. Shashadri. Apparently the practices had similar names and Dr. Grana and Dr. Shashadri had asked Dr. Ndendola to change the name of her office. Should the district court rather than dismiss the case, should the district court have said it doesn't look like they have sufficiently fled 1981 on its face. Rather than dismiss the case, grant leave to amend. Shouldn't the district court have done that in this case, Ms. Hendrick? Well, you know, Your Honor, I think there's a couple reasons that didn't happen. And one is, I think, I was a little surprised that the plaintiff never asked for leave to amend the complaint. But secondly, I don't think, I think the court saw there was no point to do that. If you look at the allegations, I think Dr. Ndendola made a litigation strategy call. She looked at what the facts that she had to work with and she thought, wow, I've got a lot more facts to work with on this improper financial motives. I don't have a whole lot I can say on racial discrimination. And I think there's a reason for that. We had a 12 v. 1 motion pending on this very issue, which was that this, this federal claim was her hook to get into federal court because she wanted to avoid some unfavorable state law that won't, that would hamper her discovery. But I don't think she could, I don't think she could cure this, Your Honor, because she alleged it, she'd have to drop her other, her other allegations in order to establish races above court cause. Yeah, but I don't think we can consider all that stuff that you have in your, your brief about the first state law. You know, there was a state court complaint that was sent to you and then you raised an issue about whether or not there was a privilege based on the staff decisions that have an entry privilege. I don't, because this was dismissed on 12 v. 6, I don't think we can consider any of that, right? Well, Your Honor, I think it is part of the record. It was not objected to for inclusion in the record. I do think that it probably isn't relevant to the question of whether or not she plausibly pled races above court cause. I think that's fair. I will say, though, that it certainly explains why the Twombly and Iqbal plausibility standards are there. I mean, this is exactly the kind of thing that that's required, that that standard was adopted for. It's not enough to just give some very general allegations of discrimination. I understand that, but the problem is the case wasn't dismissed on 12 v. 1, it was dismissed on 12 v. 6. No, Your Honor, and I think, I don't think you need those facts. Honestly, I don't think you need them to decide this case. I think the way she pled her complaint is what sinks her case. She pled above court cause for sure, but that was the improper financial motives. And Your Honor, that doesn't leave her without a remedy for what she's complaining of. She still has her state law claims. Those claims are pending in state court right now. But she can't therefore shoehorn a discrimination claim because she can't allege that the race was above court cause. She just doesn't have the facts to back that up. So, counsel, if I could interject, you raised state law claims. One of the issues on appeal is the dismissal with prejudice of two of the state law claims, one negligence and one breach of implied covenant of good faith and fair dealing. That was a little hard for me to get my arms around what the law is. I mean, we have some district court cases that say a couple of different, seems to me, different things. We have some state law cases, not from necessarily the highest courts, but seem to say something else. But I'm having trouble with the concept that someone couldn't plead facts and say, I think those constitute a breach of the express provisions of a contract. And alternatively say, and the answer may be no, that they're not clear enough that they are a violation of the express provisions. But if that's the case, that they couldn't, you know, at least plausibly plead an implied covenant of good faith, fair dealing. And so I didn't, it seems to me that, you know, that's what he pled. And the basis for the dismissal was that they're the same, which really seems to me they could be alternatives. And I'm not sure what's wrong with that. Help me understand how you, how that was correct. Sure. So I think your honor that the, that North Carolina law is clear that you can sometimes have claims for both. But there has to be, it would be separate and distinct from the contract claim, but the allegations would have to be different. And that's not what the district court concluded here. And I think if you look at the way she pled it, it was rising and falling on the same cases. At that point, that claim just becomes subsumed into the breach of contract claim. And it's an element of that claim. Essentially, if she can prove that she'll prevail on her breach of contract claim is how that may be right. Now, I got, I got that too. And it sounded like, to an extent, I could understand that you could still somehow plead that, which makes this, it seems to me, you know, a little bit academic, perhaps. I'm not sure it's correct, but anyway, I appreciate your answer. I understand what you're saying. Okay. Going back to the, the question of whether she plausibly pled races above for pause. I think if we look at the allegations, we've talked through all of those allegations about the improper financial motives. And then we, she does include some allegations about race. I mean, she says she is an Indian physician and that at some unidentified time in the past, Wake Med forced out at least one unnamed Indian physician. Why isn't that enough? Why isn't that enough on a pleading standard under Iqbal and Twombly? Why isn't, why aren't those facts sufficient? Well, I think your honor, if you look at some of the courts that this, some of the cases that this circuit has decided, you see, for example, the painter's mill grill case that we cited to you, the court, court concluded that similar allegations that don't give you details about who was involved when, when this happened, it just doesn't make it plausible enough to infer discrimination. Now that's, that's one question, but the second question, and that's the one that really is before the court, because I think the district court concluded that she plausibly pled discrimination. What they concluded she didn't plausibly plead was that the discrimination was above for cause. And so if you look at, look at it from that perspective, you have all of these weighty allegations about the improper financial motives. They're very detailed, a lot of the race allegations. Counsel, do you, do you, do you agree that the, as to, yeah, put aside for right now, the but for causation, do you agree that there's been adequate pleading under Iqbal and Twombly of racial discrimination? So we, we don't concede that your honor. I mean, that was our initial argument at the, at the outset of this case. The district court disagreed with us. I, I, I don't think, I think that under a lot of cases, under similar cases, and again, I'll refer you to the painter's mill grill case that this circuit decided, this circuit said those kinds of allegations aren't enough. But the, the district court didn't agree with us here. So that, that's not really the issue that we're arguing about on plausibly pleading discrimination, which is enough to satisfy the motivating factor test, and plausibly pleading that the discrimination was a but for cause, which you have to do to satisfy section 1981 standards. And that's why the district court said, I got to look at this again, because the, he, he had looked at it under the motivating factor test and decided, well, I think, you know, maybe, maybe it's enough, maybe it's not, but I think it's enough to go forward at this point. And the problem being once he realized that the standard was, has she plausibly, has she plausibly pled that the race was a but for cause, the district court concluded that they, it couldn't reach that conclusion. She had not. It was not plausible. And I think that's because you see all these allegations on the one hand, particularly again, she's the one herself who alleged that the improper financial motives drove this decision. This is what drove the train. And then she has these generalized allegations of racial discrimination, but there's just not enough meat to those allegations to conclude that they had a similar driving effect. Because again, the only allegation you get that it had any impact on the end results that came out of this decision was that very conclusory race was a but for, but for race, you know, this decision wouldn't have happened. And so she simply just, she didn't give enough information for the court to conclude it could plausibly infer that race caused the decision. I do want to touch very briefly on the question of whether you can have more than one but for cause. I don't think that matters here. I have a hard time envisioning how you can under the Gorsuch test, but it really doesn't matter here because the district court applied that standard. The district court said, I'm looking at whether race was pled as a but for cause and you can have more than one and race wasn't pled as a but for cause here. And unless you have any other questions, I see my time is up. So thank you. Thank you, counsel. Mr. Taylor, you got a few minutes. Thank you, your honor. And I just want to point out that proving discrimination is rarely ever direct. It's subtle and it's almost always proven by circumstantial evidence when taken together that a jury could find that racial intent was the what motivated the action. And one of the cases that we cited in our brief that I highlighted but didn't know the page for, I want to point out to the court now, your honor, it's on page 28. The Wright Phillips versus United Airlines Inc. case in that last paragraph says that allegations that, quote, the refusal to perform a contract was motivated by race, i.e. that a person of another race with a similar complaint would have been following the Supreme Court's decision in Comcast. That's a recent decision. And there's been even more decisions since Comcast has come down a lot of different cases that cited it, your honor. This was as of our brief back in April where we cited that. But I wanted with my remaining time go to the motion for reconsideration because this was a separate error by the trial court that requires reversal. And the procedural history, your honors, is set out in our brief in this complaint back in November 2018. It wasn't until October 29, 2020, that the district court ruled on defendant's initial motion to dismiss. In that time, no discovery was allowed to be conducted because the court granted the defendant's motion to block discovery while the motion to dismiss was pending. And it was pending and fully briefed for 22 months. And then when the district court finally ruled on the motion, it denied defendant's motion to dismiss. It got it right the first time. It said that we did plausibly believe discrimination. And under the Iqbal and Twombly pleading standard, based on the allegations in our complaint, that was plausible. And we didn't change anything. I mean, in light of all the allegations that you've heard all about with the anti-competitive motivations as well. And then we submit it was a shocking change of course, your honors, to immediately after that on defendant's motion for reconsideration reverse itself without adequate grounds. And the law is well settled. We submit that a motion for reconsideration is not a vehicle to identify facts or legal arguments that could have been made but were not raised at the time. There's not been any provision in the rules for a motion for reconsideration. I mean, the federal rules of civil procedure don't call for it. That's correct. I mean, people do it all the time. But it's not called. It's not in the rules. That's correct, your honor. I agree with you completely. And in our case, under the local rules of the Eastern District of North Carolina, there is a provision that requires subsequently decided authority, like what the Comcast case was in this case, to be submitted. And if this made the type of waves across the bar and was published in every article like defense counsel referenced in her comments, why didn't they submit that as subsequently decided authority when it was out for over seven months before the court issued this motion to dismiss it? Did you just hold that in the Fourth Circuit, folks shouldn't be allowed to file motions to reconsider? Because I tell you, there's some district judges that would like that. Yes, your honor. I agree completely because the rules against motions to reconsider are very important because otherwise you would just have an endless re-litigation of the same issue and getting additional bites at the apple over and over again. And for our case, we had to wait 22 months for that apple to be bitten the first time. It was very unfair to us. So counsel, let me follow up on that. And I appreciate the timing issue you just mentioned. But I mean, whether it's framed as a motion to reconsider or an order granting or denying a district court judge just determines that it issued an order that upon further reflection, it is not the way it feels the law should be. Are you saying the district court doesn't have the ability to correct itself? The district court may have that ability, but that's not what happened here, your honor. The district court said that in its opinion, the Comcast case amounted to new law that would, you know, fit into this standard of when you can do a motion for reconsideration. And as we stated in our briefs, it didn't. It only clarified the law that already existed in the Fourth Circuit that already applied the but-for-approval standard for 1981 cases and other discrimination cases. That was already the law, your honor. And we pled it right the first time. Well, I thank you all very much for your time. Thank you, counsel. Obviously, we'd love to come down and reach you and thank you in person for your argument, but we can't do that in this current time. But no, we appreciate your advocacy and we'll take the case under advisement.
judges: Julius N. Richardson, A. Marvin Quattlebaum Jr., Michael F. Urbanski